ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION



| | |
|---|---|
| RANDY DANIELS and LESTER WILLIAMS, individually and on behalf of a class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DREAMSAN, INC.,<br><br>Defendant. | CIVIL ACTION NO.<br>1:03-CV-0882-JEC |

## **O R D E R**

This case is presently before the Court on Plaintiff's Motion for Preliminary Class Certification [13-1] and to Authorize Notice to Potential Party Plaintiffs [13-2]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Plaintiff's Motion for Preliminary Class Certification [13-1] and to Authorize Notice to Potential Party Plaintiffs [13-2] should be **GRANTED**.

### **BACKGROUND**

This is an action for unpaid overtime compensation, liquidated damages, declaratory relief, costs, and attorney's fees pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19. The

complaint was filed by Randy Daniels and Lester Williams on behalf of themselves and all others similarly situated, alleging that during their employment with Dreamsan, Inc., they regularly worked in excess of forty hours per week without being paid overtime compensation as required by the FLSA. The plaintiffs' motion seeks conditional certification of an opt-in class consisting of all non-supervisory commercial truck drivers employed by Dreamsan from April 1, 2000, to the present to pick up waste and/or recycling material from Dreamsan's residential or commercial customers in Georgia. The plaintiffs' motion also seeks the issuance of a proposed opt-in notice to members of the class.

Defendant Dreamsan provides waste-disposal and recycling pick-up services to residential and commercial customers in Georgia, most of whom are located in the metropolitan Atlanta area. (Compl. [1] at ¶ 5.) Defendant employs individuals to drive its trucks and pick up its customers' solid waste and recycling materials. (*Id.* at ¶ 6.) Each of these employees possesses a commercial driver's licence ("CDL") and drives one of defendant's vehicles on designated routes to pick up and load garbage, recyclable material, and/or other waste material. (*Id.*) The drivers then take the material to designated disposal and/or drop-off areas in Georgia. (*Id.*) These commercial drivers are employed under such titles as CDL Driver, Residential Recycling Driver, Residential Garbage

2

Driver, Front-End Driver, and/or Roll-Off Driver. (*Id.*) These drivers report to one or more route supervisors, defendant's Assistant Operations Manager, and/or its Operations Manager. (*Id.*) Plaintiffs allege that defendant does not pay these commercial drivers overtime pay at the rate of one and a half times their regular rate of pay for hours worked in excess of forty per week. (*Id.* at ¶ 7.) According to plaintiffs, defendant treats the drivers as employees exempt from the FLSA and pays them fixed salaries without overtime in violation of the FLSA. (*Id.*)

Plaintiff Randy Daniels is a former employee of Dreamsan who worked for defendant as a commercial driver during the year 2002. (*Id.* at ¶ 9.) Working under the title of CDL Driver and/or Residential Recycling Driver, Daniels drove defendant's trucks to pick up customers' recycling material and then to take the material to designated drop-off locations. (*Id.*) Daniels alleges that he regularly worked more than forty hours per week but was not paid overtime compensation. (*Id.*)

Plaintiff Lester Williams is a former employee of Dreamsan who worked for defendant as a commercial driver during the year 2002 under the title of Front-End Driver. (*Id.* at ¶ 10.) During his employment with defendant, Williams drove its trucks to pick up commercial customers' solid-waste garbage and took the material to designated drop-off locations. (*Id.*) Like Daniels, Williams avers

3

that he regularly worked in excess of forty hours per week but that he was not paid overtime compensation. (*Id.*)

In addition, the plaintiffs have filed three affidavits given by current and former employees of defendant. Billy Erving states that he is presently employed by defendant as a Roll-Off Driver and has been so employed since April of 2002. (Aff. of Billy Erving at ¶ 2, attach. as Ex. B(3) to Mem. in Supp. of Pls.' Mot. for Prelim. Class Certification and to Authorize Notice to Potential Party Pls. (hereinafter, "Pls.' Mem.") [13].) Erving drives a commercial truck to pick up and load recycling and waste materials from commercial customers' businesses in and around Atlanta and then takes the materials to designated disposal or drop-off sites. (*Id.*) Erving avers that he regularly has been required to work in excess of forty hours per week during his employment with defendant and that he has never received any overtime compensation. (*Id.* at ¶ 5.)

Eric Burns states in his affidavit that he worked as a Roll-Off Driver for defendant from September 2002 until May 2003. (Aff. of Eric Burns at ¶ 2, attach. as Ex. B(4) to Pl.'s Mem. [13].) In this capacity, Burns drove a commercial truck to pick up and load waste materials and recycling materials from businesses and residences in and around Atlanta and then took these materials to designated disposal or drop-off sites. (*Id.*) Burns asserts that

4

during his employment with defendant he was regularly required to work more than forty hours per week and that he never received any overtime compensation for these hours that he worked in excess of forty. (*Id.* at ¶ 5.)

The plaintiffs have also submitted the affidavit of Bernard Woodward, in which he states that he was employed by defendant as a Roll-Off Driver from August 2001 until March 2002. (Aff. of Bernard Woodward at ¶ 2, attach. as Ex. B(5) to Pls.' Mem. [13].) According to Woodward, he too drove a commercial truck to pick up and load waste materials and recycling materials from commercial customers' businesses in and around Atlanta and then took these materials to designated disposal or drop-off sites. (*Id.*) Like the named plaintiffs and the other two affiants, Woodward avers that he regularly was required to work more than forty hours per week but did not receive any overtime compensation for doing so. (*Id.* at ¶ 5.)

Finally, plaintiffs have submitted three certificates of consent to participate as party plaintiffs executed by three former employees of defendant. These filings indicate that former Roll-Off Drivers Eric Burns and Robert Johnson have agreed to become party plaintiffs in this lawsuit, (Pls.' Notice of Filing Certificate of Consent to Participate as a Party Pl. for Eric S. Burns [4]; Pls.' Notice of Filing Certificate of Consent to

Participate as a Party Pl. for Robert Johnson [17]), and former Residential Recycling Driver Theresa Sanders has agreed to do the same. (Pls.' Notice of Filing Certificate of Consent to Participate as a Party Pl. for Theresa Sanders [16].)

## DISCUSSION

### I. The FLSA

The FLSA is a remedial statute that "has been construed liberally to apply to the furthest reaches consistent with congressional direction." *Prickett v. DeKalb County*, 349 F.3d 1294, 1296 (11th Cir. 2003) (quoting *Johnston v. Spacefone Corp.*, 706 F.2d 1178, 1182 (11th Cir. 1983)) (internal quotation marks omitted). Subject to certain exceptions, it requires employers to pay overtime compensation at a rate not less than one and one-half times an employee's regular rate of pay for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). Employers who violate this provision of the FLSA are "liable to the employee or employees affected in the amount of their ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An FLSA action for overtime pay may be maintained by "any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id.* "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such

6

consent is filed in the court in which such action is brought." *Id.* Because this opt-in provision requires that prospective plaintiffs under the FLSA must expressly consent to join a class action, FLSA plaintiffs may not certify a class under Federal Rule of Civil Procedure 23. *Prickett*, 349 F.3d at 1296 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996)). The decision to create an opt-in class under 29 U.S.C. § 216(b), like the decision on class certification under Rule 23, does remain soundly within the discretion of the district court, however. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001).

The Eleventh Circuit has outlined a two-tiered procedure that district courts should use in certifying collective actions under 29 U.S.C. § 216(b). *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003). First, at the "notice stage," the court makes a decision, usually based only on the pleadings and any affidavits which have been submitted, whether notice of the action should be given to potential class members. *Id.* (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)). "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id.* (quoting *Hipp*, 252 F.3d at 1218). If the court conditionally certifies the class, putative class members

7

are given notice and an opportunity to opt in, and the case proceeds as a representative action throughout discovery. *Id.* (quoting *Hipp*, 252 F.3d at 1218).

The second determination is typically necessitated by a motion for decertification by the defendant, usually filed after discovery is largely complete and the case is ready for trial. *Id.* (quoting *Hipp*, 252 F.3d at 1218). "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Id.* (quoting *Hipp*, 252 F.3d at 1218). If the claimants are similarly situated, the court allows the representative action to proceed to trial; if the claimants are not similarly situated, the court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. *Id.* (quoting *Hipp*, 252 F.3d at 1218). The original named plaintiffs would then be left to proceed to trial on their own individual claims. *Id.* (quoting *Hipp*, 252 F.3d at 1218).

The Court will therefore proceed with the initial determination of whether notice should be given to potential class members and a representative class conditionally certified.

## II. Should Notice be Given to Putative Class Members?

District courts have discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to 29 U.S.C. § 216(b). *Hoffman-La Roche, Inc. v.*

*Sperling*, 493 U.S. 165, 169-70 (1989).[1] The Court "has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id.* at 170-71. "The power to authorize notice must, however, be exercised with discretion and only in appropriate cases." *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp.2d 1231, 1233 (M.D. Ala. 2003) (citing *Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983)). In order to determine that notice to potential class members is appropriate, the district court must satisfy itself that there are other employees of the defendant-employer who desire to opt in and who are "similarly situated" with respect to their job requirements and with regard to their pay provisions. *Dybach v. State of Florida Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

The "similarly situated" requirement means that the plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (citations omitted). "The similarly situated requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and

---

[1] *Hoffman-La Roche* involved an ADEA collective action, brought as a section 216(b) action pursuant to the ADEA's express statutory adoption of section 216(b) of the FLSA.

9

Rule 42 (severance)." *Hipp*, 252 F.3d at 1219 (quoting *Grayson*, 79 F.3d at 1095). A "unified policy, plan, or scheme" of illegal behavior may not be required to satisfy the more liberal similarly situated requirement of section 216(b). *Id.* (quoting *Grayson*, 79 F.3d at 1095). Plaintiffs bear the burden of demonstrating a reasonable basis for their claim, and they may meet this burden, which is "not heavy," by making substantial allegations of class-wide illegal behavior, "that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* (quoting *Grayson*, 79 F.3d at 1097).

Defendant argues that the Court should not conditionally certify a class and give notice to potential class members because "the current Plaintiffs consist of one front-end driver and four roll-off drivers who are not representative of the residential recyclable truck drivers which Plaintiffs seek to add to the class." (Def.'s Opp'n to Mot. to Certify Class and Authorize Notice (hereinafter, "Def.'s Opp'n") [14] at 2.) It is true that defendant gives its commercial drivers several different job titles, such as CDL Driver, Residential Recycling Driver, Residential Garbage Driver, Front-End Driver, and Roll-Off Driver. The *Dybach* inquiry requires the Court to examine whether there are potential class members who are "similarly situated" to the named plaintiffs with respect to their job <u>requirements</u>, and not merely

10

with job <u>titles</u>, however. Plaintiffs have submitted five affidavits from current or former drivers for defendant. Included in this group are the named plaintiffs, Daniels and Williams, who served as a CDL Driver/Residential Recycling Driver and a Front-End Driver, respectively. Also included are three individuals who worked under the title of Roll-Off Driver. Though these five affiants worked under three different job titles, a review of their affidavits shows that they all had essentially the same job requirements. All of the drivers, regardless of their titles, were required to pick up and load garbage and/or recyclable materials from defendant's customers (consisting of commercial businesses and/or residences) in and around Atlanta and then to take these materials to designated disposal or drop-off sites. (*See, e.g.,* Aff. of Lester Williams at ¶ 3, attach. as Ex. B(2) to Pls.' Mem. [13]; Aff. of Billy Erving at ¶ 2, attach. as Ex. B(3) to Pls.' Mem. [13]; Aff. Eric Burns at ¶ 2, attach. as Ex. B(4) to Pls.' Mem. [13]; Aff. of Bernard Woodward at ¶ 2, attach. as Ex. B(5) to Pls.' Mem. [13].)

Defendant itself has also indicated that all of its commercial drivers performed essentially the same duties on a day-to-day basis. In its Answer, defendant stated that it employs individuals to drive its trucks to pick up and load garbage and recyclable materials and to take these materials to designated disposal drop-

11

off areas and/or processing facilities. (Answer [3] at ¶ 6.) In addition, defendant stated in an interrogatory response that it is "unable to identify the exact job title for each individual for a given work day because many drivers are used in multiple positions on an as needed basis. For example, a front-end driver may also perform the duties of a roll-off driver, municipal or non-municipal driver as needed." (Def.'s Resp. to Pls.' First Interrogs. at 9-10, attach. as Ex. C to Pls.' Mem. [13].) This response tends to show that though defendant's drivers had different titles, the duties that they performed were interchangeable.

Given the "fairly lenient" standard of this initial notice stage of the litigation, the Court finds that the named plaintiffs and potential class members are similarly situated with respect to their job requirements. "Plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Grayson*, 79 F.3d at 1096. Through their affidavits and defendant's admissions, plaintiffs have done so.

The *Dybach* test also requires the Court to inquire whether the named plaintiffs had similar pay provisions to potential class members. In this case, it is undisputed that defendant classifies all of its drivers as salaried, exempt employees who are not entitled to overtime. (Def.'s Resp. to Pls.' First Interrogs. at 10-11, attach. as Ex. C to Pls.' Mem. [13]; *see also* Aff. of Lester

12

Williams at ¶ 6, attach. as Ex. B(2) to Pls.' Mem. [13]; Aff. of Billy Erving at ¶ 5, attach. as Ex. B(3) to Pls.' Mem. [13]; Aff. Eric Burns at ¶ 5, attach. as Ex. B(4) to Pls.' Mem. [13]; Aff. of Bernard Woodward at ¶ 5, attach. as Ex. B(5) to Pls.' Mem. [13].) The Court accordingly concludes that the named plaintiffs and prospective class members are "similarly situated" with regard to their pay provisions. See *Dybach*, 942 F.2d at 1568.

Defendant also argues that this Court should not conditionally certify a class and send notice to prospective plaintiffs because "the current Plaintiffs were or are each Dreamsan drivers of trucks involved in the interstate commerce of recyclable materials such that Plaintiffs are subject to the provisions of the Motor Carrier Act" and not to the overtime compensation requirements of the FLSA "so that these Plaintiffs are not proper representatives of any driver with an FLSA claim for unpaid overtime" against defendant. (Def.'s Opp'n [14] at 2.) This argument goes to the merits of the case and is therefore misplaced at this notice stage of the litigation. In order to conditionally certify a class and send notice to potential class members at this preliminary stage, the Court must only satisfy itself that there are other employees of the defendant-employer who desire to opt in and who are "similarly situated" with respect to their job requirements and with regard to their pay provisions. *Dybach*, 942 F.2d at 1567-68. For the

13

reasons discussed above, the Court is satisfied that these conditions are met. It may be that defendant will ultimately be able to demonstrate that the named plaintiffs and some or all of the rest of its drivers are covered by the Motor Carrier Act and are therefore exempt from the overtime requirement of the FLSA. Though such a showing might operate to defeat plaintiffs' suit entirely, it does not change the fact at the moment that plaintiffs have successfully made the showings required for this Court to conditionally certify the class and to send notice. *See Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 423 (M.D. Ala. 1991) (holding that the fact that a defendant might ultimately be able to prove that it had not engaged in prohibited discrimination did not detract from the fact that the named plaintiffs had established a *prima facie* case sufficient to obtain conditional certification).

In addition, defendant will not be able to establish this defense until after discovery in this case has been completed. According to defendant, it anticipates that it will be able to produce uncontested evidence that some, if not all, of the recyclable materials hauled by the named and opt-in plaintiffs traveled in interstate commerce and that each of the plaintiffs is therefore covered by the Motor Carrier Act rather than the FLSA. (Def.'s Opp'n [14] at 10-11.) At this point, however, defendant has submitted no evidence that would support its contention that

14

the FLSA does not apply to these plaintiffs and to those similarly situated. At the notice stage, the Court's decision is based on the pleadings and any affidavits that have been submitted. *Cameron-Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003). Defendant has not submitted anything that would allow the Court to decline to conditionally certify the class and to send notice on the basis of the non-applicability of the FLSA. If defendant wishes to make this argument in a motion to decertify the class after discovery has been completed, it is free to do so, but it has not submitted anything that would allow it to carry the day on this point at the current time.

In sum, the named plaintiffs have successfully met the requirements to have this Court conditionally certify a class action and to send notice to potential class members at this stage of the litigation. First, they have shown that other current or former employees of the defendant desire to opt in to the litigation by submitting three Certificates of Consent to Participate as a Party Plaintiff and two affidavits by additional individuals. Second, the named plaintiffs have shown that they are similarly situated to the prospective class with respect to their job duties. Plaintiffs have accomplished this by submitting five affidavits showing that the drivers employed by defendant all were tasked with the similar duties of picking up garbage and recyclable

materials from defendant's customers and dropping off these materials at certain designated locations. Third, the named plaintiffs have established that they are similarly situated to the prospective class with regard to their pay provisions, because the defendant classifies all its drivers as salaried workers who are exempt from the overtime compensation requirement of the FLSA.

As explained above, the similarly situated requirement is "fairly lenient" at the notice stage. *Cameron-Grant*, 347 F.3d at 1243 n.2. Plaintiffs bear the burden of demonstrating a reasonable basis for their claims. *Hipp*, 252 F.3d at 1219. Plaintiffs may meet this burden, which is "not heavy," by making substantial, "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* In this case, plaintiffs bore their burden by submitting five affidavits tending to show that there is a group of similarly situated employees and former employees of defendant who are and were responsible for similar duties and who all claim to have worked more than forty hours per week without being paid overtime compensation as required by the FLSA. Defendant did not submit any affidavits, or any other evidence, to contradict the affidavits put forward by the plaintiffs. Plaintiffs' substantial allegations of their claim are therefore largely unchallenged and are enough to convince the

16

Court, on this record, that this case should move forward as a collective action under 29 U.S.C. § 216(b).

Accordingly, the Court **conditionally certifies** a class consisting of all non-supervisory commercial truck drivers employed by Dreamsan, Inc. from April 1, 2000, to the present to pick up garbage, waste, and/or recyclable materials from Dreamsan's residential or commercial customers in Georgia. The named plaintiffs will be given the opportunity to discover and contact these individuals via court-authorized notice to apprise them of this action. The Court **DIRECTS** that the Notice of Pendency of Wage and Hour Lawsuit, attached as Exhibit A to plaintiffs' motion, be sent to all potential class members.[2] The Court **ORDERS** that all Certificates of Consent to Participate as a Party Plaintiff in this lawsuit be filed with the Court within sixty (60) days of the entry date of this Order.[3] The Court further **ORDERS** the parties to

---

[2] In the blanks on pages four and five of the notice, **the date sixty (60) days** from the date of the issuance of this Order **will be inserted**. (*See* Notice of Pendency of Wage and Hour Lawsuit, attach. as Ex. A to Pls.' Mem. [13].)

[3] The Court is bound to set a cutoff date for the filing of consents so that this action may proceed in a diligent fashion. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989). By approving the form of notice sent, the Court assures itself that this cutoff date is reasonable, "rather than having to set a cutoff date based on a series of unauthorized communications or even gossip that might have been misleading." *Id.*

17

proceed with discovery in this matter, if they are not already doing so.

## **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Preliminary Class Certification [31-1] and to Authorize Notice to Potential Party Plaintiffs [32-2].

SO ORDERED, this 28 day of January, 2004.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev 8/82)